IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 8:07CV351 |
| | ) | Bankruptcy Case No. 05-81466 |
| TIMOTHY JAMES O'NEIL, | ) | (Chapter 13) |
| | ) | |
| Debtor. | ) | **MEMORANDUM** |
| _____ | ) | **AND ORDER** |

    Nebraska Workforce Development, Department of Labor ("NWD-DOL"), a creditor in this case, appeals an order of the bankruptcy court finding that NWD-DOL's recoupment of "a pre-petition overpayment of unemployment insurance benefits from benefits that first became payable post-petition . . . was in violation of the automatic bankruptcy stay and that the recouped funds should be returned to Debtor." (Filings 74 & 75 in Bankr. Case No. BK05-81466-TJM; *see also In re O'Neil*, 370 B.R. 215 (Bankr. D. Neb. 2007).) NWD-DOL has elected to have its appeal heard by this court. (Filing 78 in Bankr. Case No. BK05-81466-TJM.)

### *Standard of Review*

    "'When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error.'" *In re Falcon Products, Inc.*, 497 F.3d 838, 840-41 (8th Cir. 2007) (quoting *In re Fairfield Pagosa, Inc.*, 97 F.3d 247, 252 (8th Cir. 1996)).

### *Bankruptcy Court's Order*

    Because the facts in this case are not disputed and the parties' arguments were aptly described by the Bankruptcy Court, they shall be reproduced below verbatim from the memorandum accompanying the order that is the subject of this appeal:

> Debtor received an overpayment of unemployment insurance benefits in 2002 and 2003, in the amount of $5,999.00. On August 17, 2004, Debtor was convicted of unemployment insurance fraud by the Dodge County Court and was ordered to pay restitution in the amount of $5,369.00 as part of the conviction. Debtor made restitution for some of the balance due, and was otherwise able to reduce the balance owed on the overpayment to $1,809.50 by September 2006.
>
> Debtor subsequently filed a new claim for unemployment insurance benefits with the NWD-DOL. Prior to paying Debtor any new benefits, the NWD-DOL recouped the sum of $1,800.00 from Debtor's unemployment benefits from August through November 2006. The NWD-DOL credited the $1,800.00 recoupment against Debtor's remaining $1,809.50 overpayment balance.
>
> Debtor points out that this bankruptcy was filed April 21, 2005. Thus, Debtor argues the overpayment of unemployment insurance benefits in 2002 and 2003, and Debtor's criminal conviction with respect thereto, were pre-petition events, and the NWD-DOL is violating the automatic bankruptcy stay by recouping the pre-petition balance due from the post-petition benefits to which Debtor became entitled. Debtor points out that NWD-DOL never sought relief from the automatic bankruptcy stay to recoup its claim against post-petition benefits.
>
> The NWD-DOL argues that the pre-petition unemployment payments and the post-petition unemployment benefits arise from the "same transaction," that the NWD-DOL has a common-law right to recoupment codified under state law, and that recoupment is not affected by the automatic stay or discharge injunction of the Bankruptcy Code. The NWD-DOL further argues that Debtor's fraudulent activity in receiving the pre-petition overpayments weighs heavily in favor of applying the equitable doctrine of recoupment.

*In re O'Neil*, 370 B.R. 215, 216 (Bankr. D. Neb. 2007).

In reaching its conclusion that NWD-DOL's recoupment of Debtor O'Neil's pre-petition overpayment of unemployment insurance benefits against Debtor's post-

petition benefits violated the automatic bankruptcy stay, the bankruptcy court heavily relied on *In re McClinton*, No. 8:06CV602, 2007 WL 2932898 (D. Neb. May 15, 2007) (Smith Camp, J.) (denying NWD-DOL's appeal of bankruptcy court's decision to reopen case to determine whether NWD-DOL was legally entitled to recoupment of overpaid unemployment benefits made to debtor before bankruptcy petition was filed by reducing debtor's post-discharge unemployment benefits). As in the case at bar, *McClinton* involved NWD-DOL's reduction of a debtor's post-discharge unemployment benefits because of an overpayment of unemployment benefits made to the debtor *before* the debtor filed her Chapter 7 petition. However, unlike the case now before this court, the debtor in *McClinton* had not acted fraudulently in obtaining the overpaid unemployment benefits. As the court noted:

> In [McClinton's] case there is no administrative or judicial finding that McClinton acted fraudulently or willfully. In fact, there was no determination by the NWD-DOL that she willfully misrepresented information in 2004 or that she acted fraudulently. The NWD-DOL issued a "Notice of Adjudicator's Overpayment Determination" to McClinton stating only that she had mis-reported her earnings for the week of September 18, 2004. (BK Filing No. 19, Ex. 1). In the absence of a record establishing the character of her mis-reporting as anything but innocent or inadvertent, the Court will not impose a suspect motive on her actions.

*In re McClinton*, 2007 WL 2932898, at *6.

The *McClinton* court noted the "fundamental tenet of bankruptcy law . . . that a petition for bankruptcy operates as a 'cleavage' in time" and "[o]nce a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions." *Id*. at *2. Therefore, any exception allowing recoupment "should be narrowly construed." *Id.* (citations & quotations omitted). Applying this narrow construction, the *McClinton* court found that recoupment in bankruptcy is only justified when "'both debts . . . arise out of a single integrated transaction so that it

3

would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations,'" *id.* at *4 (quoting *University Med. Ctr. v. Sullivan*, 973 F.2d 1065, 1081 (3rd Cir. 1992)).

Accordingly, the court in *McClinton* affirmed the bankruptcy court's decision to reopen the case and stated that NWD-DOL "likely will not be entitled to recoupment" for two reasons: (1) "the federal and state system for obtaining unemployment benefits treats each period of unemployment separately for eligibility purposes," which cannot be characterized as a single integrated transaction, and (2) "McClinton did not act wilfully or fraudulently in obtaining the overpayment." *Id.* at *6.

In the case at bar, the bankruptcy court noted the main difference between *McClinton* and this case—"here we have a situation where the debtor *did* act fraudulently. Specifically, Debtor was criminally convicted for fraudulently obtaining unemployment benefits." *In re O'Neil*, 370 B.R. at 218. Nevertheless, the bankruptcy court concluded that the existence of such fraudulent conduct was not "enough to tip the equities in favor of treating the unemployment benefit payments as a single transaction" such that recoupment would be justified for three reasons: (1) the bankruptcy court was bound to follow the *McClinton* court's holding that unemployment benefits are conditioned upon eligibility requirements for each independent period for which benefits are sought, and when separated in time by the filing of a bankruptcy petition and discharge injunction, the benefits overpaid in 2002 and 2003 could not be characterized as part of the "same transaction" as those payable in 2006; (2) since this case was filed before the 2005 BAPCPA amendments[1]—that is, at a time when fraud debts were properly dischargeable in Chapter 13 cases—the Debtor's fraudulent conduct is not a special circumstance that

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (Apr. 20, 2005).

4

would justify recoupment; and (3) the Debtor in this case has specifically provided in his confirmed Chapter 13 plan for full payment of NWD-DOL's claim, enabling NWD-DOL to seek relief from the automatic stay like any other creditor and proceed with its remedies outside of bankruptcy. *Id*.

For these reasons, the bankruptcy court determined that NWD-DOL's recoupment of the Debtor's pre-petition overpayment of unemployment insurance benefits against the Debtor's post-petition benefits violated the automatic bankruptcy stay, and the court ordered such funds to be returned to the Debtor with instructions to "use such funds to immediately cure any and all delinquencies under [the Debtor's] Chapter 13 plan."[2] *Id*.

### *Analysis*

The Eighth Circuit Court of Appeals recognizes recoupment in the bankruptcy setting as an equitable principle that allows a creditor in bankruptcy to avoid full liability for a debtor's claim "'because of matters arising out of the transaction sued on.'" *United States v. Dewey Freight System*, 31 F.3d 620, 622-23 (8th Cir. 1994) (quoting 4 *Collier on Bankruptcy* ¶ 553.03, at 553-17 (15th ed. 1994)). That is, recoupment allows "a creditor to recoup a pre-petition claim by reducing its obligation to pay for a bankrupt's post-petition services." *Dewey Freight System*, 31 F.3d at 623. Recoupment is a narrow exception to the general principle of bankruptcy law that once a petition in bankruptcy is filed, "'debts that arose before the petition may not be satisfied through post-petition transactions.'" *Id*. (quoting *In re B & L Oil Co.*, 782 F.2d 155, 158 (10th Cir. 1986)).

---

[2]Attorneys for NWD-DOL have filed a notice (filing 82) stating that pursuant to the bankruptcy court's order, it sent a check for $1800 to the Debtor's attorney on July 12, 2007, and the check was cashed on or about July 18, 2007.

To prevent creditors from "using recoupment to gain unwarranted preferences, courts require that 'the creditor . . . have a claim against the debtor that arises from the same transaction as the debtor's claim against the creditor.'" *Id.* (quoting *In re NWFX, Inc.*, 864 F.2d 593, 597 (8th Cir. 1989)). The Eighth Circuit Court of Appeals has noted that because of the equitable nature of the doctrine, courts have not precisely defined the "same-transaction" standard, instead focusing on the "facts and equities of each case." *Id.*

The "facts and equities" of this case require me to conclude that the equitable right to recoupment allowed NWD-DOL to subtract overpaid unemployment benefits—which were fraudulently obtained by the Debtor before he filed his bankruptcy petition—from the Debtor's post-bankruptcy unemployment benefits because (1) the Debtor in this case was criminally convicted of unemployment insurance fraud, and (2) the Debtor's pre- and post-petition claims for unemployment insurance benefits were intertwined under Nebraska unemployment insurance statutes, which specifically provide for recoupment of overpaid unemployment benefits.

This conclusion is supported by the clear majority of courts that have addressed nearly identical factual situations and have found that recoupment is proper from bankrupt debtors who fraudulently obtained unemployment benefits, then filed new post-bankruptcy unemployment claims. *In re McWilliams*, 384 B.R. 728 (Bkrtcy. D.N.J. 2008) (in case where debtor fraudulently misrepresented employment status in order to receive unemployment benefits before filing for bankruptcy, state department of labor's recoupment of pre-bankruptcy-petition unemployment payments by withholding post-petition benefits did not violate automatic stay; noting that receipt of unemployment benefits, even if sporadic, creates a societal contract with a continuous and ongoing relationship between state and recipient and that state statute provided for recoupment of unemployment benefits obtained by fraud); *In re Sarmiento & Ramos*, No. 06-4729, 2007 WL 2688907 (D.N.J. Sept. 12, 2007)

6

(holding that state department of labor properly withheld post-bankruptcy-petition unemployment compensation benefits to Chapter 13 debtor as recoupment of pre-petition unemployment benefits that had been fraudulently obtained; noting that the state's two methods of recourse against fraud by debtors are recoupment or criminal sanctions, with recoupment being most practical, appropriate, and affordable); *In Re Mewborn*, 367 B.R. 529 (Bkrtcy. D.N.J. 2006) (holding that state department of labor was entitled to recoup fraudulently obtained unemployment compensation benefits against future benefits when state department of labor administratively determined that debtor obtained unemployment benefits in 1993 by fraud and willful misrepresentation, debtor filed for chapter 13 bankruptcy protection in 2000, and state recouped overpayments made in 1993 from unemployment benefits claimed in 2004; noting that states have responsibility to serve public interest by recouping benefits erroneously paid to unentitled recipients, that debtor's 1993 overpayment and 2004 benefits arose from same transaction for recoupment purposes, and that state department of labor did not violate debtor's stay because doctrine of recoupment operates outside debtor's bankruptcy stay); *In re Adamic*, 291 B.R. 175 (Bkrtcy. D. Colo. 2003) (concluding that state department of labor did not violate automatic Chapter 13 bankruptcy stay when it recouped unemployment benefits overpaid in 1993 from debtor's 2002 unemployment benefits because (1) although two episodes of unemployment were temporally distinct, they were so closely intertwined that allowing debtor to shirk repayment obligations would be inequitable; (2) department did not violate stay because post-petition benefits were not property of the debtor or estate; (3) Congress expressly authorizes states to enact statutes permitting recoupment of overpayments by withholding benefits[3]; and (4) state statute allowed

---

[3]*See* 42 U.S.C. § 503(g)(1) ("A State may deduct from unemployment benefits otherwise payable to an individual an amount equal to any overpayment made to such individual under an unemployment benefit program of the United States or of any other State, and not previously recovered.") (as amended by Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, 122 Stat. 923 (May 22, 2008)); 26 U.S.C. § 3304(a)(4)(D) ("The Secretary of Labor shall approve any State law . . . which he

7

department to withhold overpaid unemployment benefits from later claim for benefits after department formally determined in 1994 that debtor obtained benefits by false representation and willful failure to disclose material facts ); *In re Stratman*, 217 B.R. 250 (Bkrtcy. S.D. Ill. 1998) (state department of employment security did not violate automatic stay when it recouped overpaid unemployment benefits received prior to filing of bankruptcy by withholding post-bankruptcy-petition unemployment benefits when (1) department issued determination that overpayment was caused by debtor's willful failure to disclose earned income and when (2) state statute required individuals who received unemployment benefits through nondisclosure or misrepresentation to repay benefits or have such benefits deducted from future unemployment benefits, thereby creating a "logical relationship between payment of . . . unemployment benefits and the recovery of . . . unemployment benefit overpayments. . . . the two arise from the same transaction."); *In re Gaither*, 200 B.R. 847 (Bkrtcy. S.D. Ohio 1996) (state agency did not violate automatic bankruptcy stay when debtors obtained initial unemployment benefits through fraudulent misrepresentations, filed for bankruptcy, and then sought additional unemployment benefits; "the Court finds it equitable for the [state agency] to recoup the prepetition unemployment benefit overpayments from the postpetition unemployment payments," especially when state statute specifically provided for recoupment of fraudulently obtained benefits); *In re Ross*, 104 B.R. 171 (E.D. Mo. 1989) (reversing bankruptcy court's order that found state agency to have violated automatic stay when state agency withheld post-bankruptcy-petition unemployment benefits to offset pre-bankruptcy-petition overpayments that were obtained by fraud; "a debtor should not simply be permitted to avoid her pre-petition obligation to repay fraudulently

---

finds provides that . . . all money withdrawn from the unemployment fund of the State shall be used solely in the payment of unemployment compensation . . . except that . . . amounts may be deducted from unemployment benefits and used to repay overpayments as provided in section 303(g) of the Social Security Act [42 U.S.C. § 503(g)(1)] . . . .").

8

obtained benefits by filing for bankruptcy and then filing a new claim for unemployment compensation"; recognizing that "[e]quity demands some compromise," court encouraged and approved state agency's proposal in future cases to file notice of recoupment with bankruptcy court as part of debtor's reorganization plan, rather than "forcing an unemployed bankrupt debtor to forego her only form of sustenance for several months as penalization for receiving too much money from an earlier claim for benefits"); *In re Maine*, 32 B.R. 452 (W.D.N.Y. 1983) (state did not violate automatic stay when it recouped pre-bankruptcy-petition unemployment overpayments from post-bankruptcy-petition unemployment benefits in case where debtor received overpayment via willful misrepresentations; "if the debtor can side-step the State's ability to recover from his future benefits, he obtains not just a fresh start, but a head start, at the expense of the financial integrity of the overall [unemployment insurance] program"). *But see In re Malinowski*, 156 F.3d 131 (2nd Cir. 1998) (state department of labor not permitted to withhold unemployment benefits on a 1996 claim of debtor who filed for bankruptcy in 1995 and who received overpayment of unemployment benefits in 1994; the state initially determined debtor was eligible for benefits, paid such benefits, and then determined debtor's ineligibility because he left his employment voluntarily and without good cause; explicitly recognizing that "[t]he lack of fraud distinguishes [this] case from *Maine* and others in which the government was permitted to recoup overpayments resulting from fraud" and distinguishing *In re Maine*, 32 B.R. 452; *In re Gaither*, 200 B.R. 847; *Ross,* 104 B.R. 171 ).

Further, though referenced interchangeably as "offset," "recoupment," and "withholding," Nebraska statutes governing employment security specifically recognize the principle of recoupment as a means of recovering erroneous unemployment benefit payments:

> Any person who has received any sum as benefits under the Employment Security Law to which he or she was not entitled shall be

9

> liable to repay such sum to the commissioner for the fund. Any such erroneous benefit payments shall be collectible . . . by *offset* against any future benefits payable to the claimant with respect to . . . any benefit year which may commence within three years after the end of such current benefit year, except that no such *recoupment* by the *withholding* of future benefits shall be had if such sum was received by such person without fault on his or her part and such *recoupment* would defeat the purpose of the Employment Security Law or would be against equity and good conscience . . . .

Neb. Rev. Stat. Ann. § 48-665(2) (LexisNexis 2007). *See also* Neb. Rev. Stat. Ann. § 48-663.01(1) & (2)(a) (LexisNexis Cum. Supp. 2007) ("If any person liable to repay an overpayment of unemployment benefits resulting from a determination under subsection (1) of this section [that an individual has willfully failed to disclose amounts earned during a week for which benefits are claimed] fails or refuses to repay such overpayment . . ., the commissioner may issue a levy on salary, wages, or other regular payments due to or received by such person and such levy shall be continuous from the date the levy is served until the amount of the levy is satisfied.").

The holdings of the above nearly identical cases, and the existence of Nebraska statutes recognizing recoupment as a remedy for overpayment of unemployment benefits achieved by fraud, dictate the conclusion that the NWD-DOL's recoupment of the Debtor's pre-petition overpayment of unemployment insurance benefits against the Debtor's post-petition benefits—when the overpayment was achieved by fraud on the part of the Debtor—did not violate the automatic bankruptcy stay. Indeed, "Congress and state legislators have an obligation to prudently manage and conserve funds, like the state unemployment compensation fund, which are entrusted to the lawmakers' care. It would be a breach of this fiduciary responsibility to allow wrongdoers to commit fraud without redress through protections afforded [the debtor] under bankruptcy laws." *In re Sarmiento & Ramos*, 2007 WL 2688907, at *3.

Moreover, I am not persuaded by the bankruptcy court's reasons for concluding

10

that the Debtor's fraudulent conduct was not enough to justify recoupment in this case. First, the *McClinton* case on which the bankruptcy court relied did not involve an administrative or judicial finding of fraudulent or willful collection of unemployment benefits as the source of the overpayment of unemployment benefits—a key fact to those courts allowing recoupment (*In re McWilliams*, 384 B.R. 728; *In re Sarmiento & Ramos*, 2007 WL 2688907; *In Re Mewborn*, 367 B.R. 529; *In re Adamic*, 291 B.R. 175; *In re Stratman*, 217 B.R. 250; *In re Maine*, 32 B.R. 452; *In re Gaither*, 200 B.R. 847; *Ross,* 104 B.R. 171), and a distinguishing fact expressly noted by those courts not allowing recoupment (*In re Malinowski*, 156 F.3d 131; *In re McClinton*, 2007 WL 2932898).

Second, the fact that the Bankruptcy Code has been amended is irrelevant because recoupment does not appear in the Code and is a general doctrine not limited to bankruptcy matters. *United States v. Dewey Freight System*, 31 F.3d at 623. Rather, recoupment is an equitable principle that "comes into bankruptcy law through the common law, rather than by statute, and is not subject to the limitations of section 553 or the automatic stay. The automatic stay is inapplicable, because funds subject to recoupment are not the debtor's property." *In re Malinowski*, 156 F.3d at 133 (internal citations omitted). *See also In re Gaither*, 200 B.R. at 850 ("Because recoupment only reduces a debt, rather than constituting an independent basis for a debt, it is not a claim in bankruptcy, therefore, it is not subject to the discharge injunction.").

Finally, because the recouped funds were not the Debtor's property and are not subject to the automatic stay, it would be illogical to require the NWD-DOL to seek relief from the automatic stay like any other creditor and proceed with its remedies outside of bankruptcy.

Accordingly, I shall grant NWD-DOL's appeal.

IT IS ORDERED:

1. The appeal filed by creditor Nebraska Workforce Development-Department of Labor (filing 1) is granted;

2. The order of the United States Bankruptcy Court for the District of Nebraska dated June 28, 2007, (filing 75 in Bankr. Case No. BK05-81466-TJM) requiring funds recouped by creditor Nebraska Workforce Development-Department of Labor to be returned to the Debtor is reversed; and

3. Judgment shall be entered by separate document.

June 26, 2008.                      BY THE COURT:

                                             s/ *Richard G. Kopf*
                                             United States District Judge